Lena Margaret Chaney PARKER (Ramsey),
Appellant,

v.

James William PARKER, Appellee.

Court of Appeals of Kentucky.

May 28, 1971.

Glay E. Maggard, Wilson & Maggard, Munfordville, for appellant.

Jon W. Goodman, Munfordville, for appellee.

OSBORNE, Judge.

This is an appeal from an order of the Hart Circuit Court refusing to change custody of three infant children, which had previously been awarded to the father by agreement of the parties. Appellant and appellee were married on August 6, 1960, and made their home with appellant's parents. They have three children, Tony, ten years of age; Susan, nine years of age; and Michael, five years of age.

The difficulty between the parties was brought about when appellant left her home and family and spent one or more nights in a motel room with another man. In her brief she styles this occurrence as an indiscretion. Even though that label may be wanting in some respects, we will adopt it for our use herein simply because of its brevity. Following the indiscretion, the parties were reconciled and lived together for a brief period of time. However, soon matters worsened again because of appellant's long absences from home, many times late at night.

Appellee, tiring of appellant's indiscretions, on November 22, 1966, commenced divorce proceedings against her. An agreement of the parties was entered into and made a part of the judgment awarding custody of the children to the appellee.

On August 23, 1967, appellant married John Edward Ramsey. They now make their home in the state of Indiana. Following the divorce, appellee and the children remained with the appellant's parents in Hart County. In 1969, appellee remarried and established a home near appellant's

parents and the children. The children now make their home with appellant's parents with the consent of appellee who contributes to their support.

In her present motion before the court, appellant asked the court to modify the original decree and award her custody of the children. The substance of the testimony before the trial court is that the children are presently well adjusted and happy living with appellant's parents, where they are frequently visited by their father. They are making good grades in school and have no desire to change their place of abode. Appellant insists in this proceeding that being the mother of young children she is entitled to their custody under previous rulings of this court and the mere fact that she is guilty of an "indiscretion" will not deprive her of that right.

Appellee insists that the welfare of the children is controlling, citing in support of this contention many of our previous opinions. The mother further points out that at the hearing the trial judge took the oldest child into chambers and there talked with him without permitting the parties to be present.

█ We are of the opinion the chancellor was correct in denying the motion for change of custody. We do not believe it is indispensable that a trial court find that a mother is morally unfit to have custody of children as a prerequisite of awarding custody to the father. Yelton v. Yelton, Ky., 395 S.W.2d 590 (1965); Watson v. Watson, Ky., 434 S.W.2d 33 (1969).

█ In determining as between a mother and father who should have custody of children the trial court of necessity must consider a large number of factors. To start with they are both parents and insofar as to their rights to their children are concerned, they have equal rights. There has existed in the law the concept that the mother has the better right to young children. However, the basis of this rule is nothing more or less than the fact that under normal conditions a mother by her nature is better equipped to nurture and care for small children. It is more a practical consideration than a rule of law. Some of the factors which a trial court may properly consider in determining custody are:

1. Which of the parents shows the greater character and stability that would make him or her the more suitable person to preside over a home in which the children can adequately be reared?

2. All factors contributing to the breaking up of a home and marriage.

3. Which parent offers the more suitable home environment in the future? Have either of them remarried? If so, what type of person will the stepparent be?

4. What are the desires of the children and what will least disturb them in their lives?

5. The availability of educational facilities.

6. The health of all parties concerned, both physical and mental.

7. The possible financial arrangements. Whether the mother and father both must work or their ability to work and produce an income to support the family.

8. The respective ages of the parents and in some cases other relatives who must assist in the rearing of the children.

When a trial court has properly considered all of these factors and made a value judgment taking into consideration the claims of both parents and the future of the children this court will not and should not disturb that judgment. We are of the opinion the trial court considered all relevant factors in this case.

After all witnesses had testified in the case the judge announced that he would question the oldest boy in chambers. Appellant's attorney objected to not being permitted to be present when the court

interrogated the child. The record does not reveal that this objection was ruled upon but does reveal that the judge took the boy into chambers and asked him the following questions:

"BY CHARLES R. RICHARDSON, JUDGE

Q1 Tony, how old are you?

A (Answer not heard).

2 How long have you lived with your grandparents?

A Four years.

3 Do you like it out there?

A Yes.

4 Do you still want to live with them?

A Yes.

5 Why don't you want to live with your mother?

A Because he might come in drunk and whip us.

6 Has he ever whipped you before?

A No.

7 When you visit up there in the home, does he drink whiskey?

A I never saw him.

8 Are you in school?

A Yes.

9 You made the honor roll down here, didn't you?

A Yes.

10 That's all I want."

Appellant now contends that the judgment of the court should be reversed because the trial court questioned the child without permitting the parties or their attorneys to be present. In York v. York, Ky., 280 S.W.2d 553, we stated that once the trial court has determined by voir dire examination that the child is a suitable witness then any testimony given by the child should be in the presence of the parties or their counsel if it is to be made the basis of the court's decision. In Schwartz v. Schwartz, Ky., 382 S.W.2d 851, citing York v. York, supra, we held that the parties had a right to have the testimony of the child reported so that it may be used for appellate review.

The calling of children into chambers by trial judges in proceedings where their custody is at issue is a quite common practice. Many times it is done with the consent of the parties for they realize the traumatic effect that would be suffered by the child if called as a witness in open court to testify in a controversy between its mother and father. Simple parental compassion for a child would dictate this course. Most trial courts are extremely reluctant to permit parents to embroil their children in controversies between themselves, to subject them to questioning in the presence of parents and the rigors of cross-examination, especially where the child is of tender years. Even though proceedings concerning custody of children remain adversary proceedings in our law and even though in such proceedings a party is generally permitted to be present when all witnesses are examined and given the right of cross-examination of all witnesses, the situation here presented is a delicate one. The elementary principles of humanitarianism are so strongly against the placing of a child between its parents that we feel a trial court should have a wide latitude in protecting the child. Here the child was not interrogated concerning anything except its own desires relative to the parent with whom it wished to live and even though the better practice might have been to permit appellant's attorney to be present when the out-of-court conference took place, we do not believe it was so prejudicial as to require a reversal of the case.

Judgment affirmed.

All concur.